## Bearden v. Kauffman

*Richard W. Rogers*, for plaintiff.
*Harold Detweiler*, for defendant.

SMILLIE, J., January 17, 1973.—The instant matter comes before the court on plaintiff's motion for summary judgment against defendant, Yankee Lines, Inc., employer of defendant, Kauffman.

Pennsylvania Rule of Civil Procedure 1035 provides:

"(a) After the pleadings are closed, but within such time as not to delay trial, any party may move for summary judgment on the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits, if any.

"(b) The adverse party, prior to the day of hearing, may serve opposing affidavits. The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issues of liability alone although there is a genuine issue as to the amount of damages."

Plaintiff in the case here filed a complaint in trespass, alleging that Kauffman, an employe of Yankee Lines, Inc., while acting within the scope of his authority and upon Yankee Lines' business, negligently drove a tractor-trailer into a telephone pole upon which plaintiff was working. Plaintiff further alleged that the vehicle, operated by Kauffman, was owned by Yankee Lines, Inc.

No answer was filed, although counsel had entered an appearance for both defendants.

On March 26, 1971, plaintiff served interrogatories upon Kauffman. Kauffman had failed to answer the interrogatories. Plaintiff filed a motion for sanctions requesting that a default judgment be entered against Kauffman. Counsel for defendants filed an answer admitting that Kauffman had failed to answer the interrogatories and stating that Kauffman refused to cooperate with counsel in answering the interrogatories. On June 18, 1971, Judge David E. Groshens handed down an order providing that unless Kauffman answered the interrogatories within 20 days thereof, a default judgment could be entered *against him*. On July 9, 1971, plaintiff took a judgment by default against Kauffman.

Plaintiff now seeks a summary judgment against Yankee Lines, Inc.

In order to succeed on a motion for summary judgment, plaintiff must show that no genuine issue as to any material fact exists. The material facts here are: (1) the agency of Kauffman; and (2) his negligence.

The agency of Kauffman and the ownership of the vehicle driven by him have been admitted by the failure of Yankee Lines, Inc., to file an answer denying these allegations: Pennsylvania Rule of Civil Procedure 1045(a).

The pivotal question on plaintiff's motion for

summary judgment is whether the default judgment entered against Kauffman for *his* failure to answer interrogatories should be res judicata on the issue of negligence so that the target defendant, no matter how justified the defense, is precluded from showing the facts.

In order for a judgment to be res judicata on the issue of negligence, the following must appear:

1. A valid final judgment *on the merits;*
2. Identity of the thing sued for;
3. Identity of the cause of action;
4. Identity of persons and parties to the action; and
5. Identity of quality in persons for or against whom the claim is made: Helmig v. Rockwell Mfg. Co., 389 Pa. 21, 29 (1957); Waynik v. Suhyda, 22 D. & C. 2d 208 (1960).

A judgment by default is a judgment on the merits and normally a judgment against an agent acting within the scope of his authority is res judicata on the issue of negligence as to the employer: Waynik v. Suhyda, supra, at 217.

However, Waynik v. Suhyda is clearly distinguishable from the case at bar.

In Waynik, plaintiff brought an action in Federal court naming the employe as a third-party defendant. By *agreement of plaintiff,* the court ordered the Federal action *dismissed* with prejudice. Plaintiff then brought a *second* action but in State court, Cambria County, Pa., against the *employer* who had not before been sued in the prior case. The Cambria County court granted judgment on the pleading against plaintiff, holding that the prior *Federal* action was res judicata on the issue of the employer's liability.

The Waynik court said:

"If the order in the prior case [the Federal court] was a judgment on the merits, we are satisfied 'the

ultimate and controlling issues have been decided' [quoting from Hockman v. Mortgage Finance Corporation et al., 289 Pa. 260], and the defense of res judicata will bar the present action."

With such proposition, there can be no quarrel. That is the law that if the controlling and ultimate "issues were decided on the merits," it would be res judicata; but in the case at bar, the issues were never decided on the merits and were never tested in trial.

The Waynik court blithely finds as a fact that the Federal court "*decided* the issues," whereas there is nothing in the recitation of the facts to warrant such a conclusion, although the Cambria County court may have ascertained it from some other source. The repeated reiteration by the Cambria County court that the prior Federal court action decided the issues on the merits resolves the question of res judicata. The case at bar does not show any determination of the merits.

In the Waynik case, it was the same plaintiff in both orders and he *had control over the action* taken which resulted in a judgment against him in the Federal court. In the case at bar, defendant had no control whatsoever over the action of the employe and was helpless in protecting himself against hostile or improper conduct by defendant.

In other words, the vigor of the procedure in the Federal suit was entirely plaintiff's action, whereas in the case at bar, defendant is defensively helpless to assert his rights, his facts, his issue. The conduct of a totally unrelated, hostile employe-defendant could prevent an employer from asserting a defense if res judicata were to apply.

Plaintiff, in the Waynik case, elected to permit his Federal suit to be decided against him but in the case

at bar, defendant is being throttled from ever being heard *on the merits* of his case.

There are two basic differences in the Waynik case and the one at bar, to wit: (1) no determination of the merits; and (2) no control over the original procurement of an adverse decision.

In passing, too, it might be noted that Federal court procedures are in general different from Pennsylvania court procedures both in rule and application.

The judgment entered against Kauffman because of his failure to answer interrogatories is, as to him, a valid final judgment on the merits and in the usual situation would be binding on Yankee Lines, Inc., because the essential identities of issues and parties are present, but the obvious unfairness in the case at bar to allow such to occur is apparent. By reason of a procedural rule, the true defense of the one who must pay is forever foreclosed through no fault of his. The mischief which could be accomplished by a disgruntled employe is obvious; or, as here, when the judgment obtained against the employe was due to failure to obtain his cooperation either intentionally or unavoidably.

The situation presents a unique problem. In determining whether the doctrine of res judicata should be applied, two important policy considerations must be reviewed: (1) the policy of avoiding the relitigation of an issue; and (2) the right of every litigent to have his day in court.

The sanction of default judgment for failure to answer interrogatories can be used only against the party refusing to answer or inducing another not to answer interrogatories. Pennsylvania Rule of Civil Procedure 4019(c)(3) provides:

"(c) The court, when acting under Subdivision (a) of this rule, may make . . .

"(3) an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or entering a judgment of non-pros, or by default *against the disobedient party or party advising the disobedience.*" (Italics supplied.)

The reason for permitting a default judgment only *against the disobedient* party is clear: the sanction of default judgment is an extreme penalty, one which should only be applied when the penalty "fits the crime": Goodrich-Amram §4019(c)-5.

The serious due process problem involved in entering a default judgment because of a party's disobedience was emphasized by the Supreme Court of the United States in Hovey v. Elliott, 167 U.S. 409 (1897), wherein the district court had removed the answer of defendants from the files and entered judgment pro confesso against them because they had failed to comply with an order of the court directing them to pay into the registry of the court a sum of money which had been illegally withdrawn. The court, per White, J., stated:

"[E]ven conceding that the statute does not limit their authority, and hence that the courts of the District of Columbia, notwithstanding the statute, are vested with those general powers to punish for contempt which have been usually exercised by courts of equity without express statutory grant, a more fundamental question yet remains to be determined, that is, whether a court possessing plenary power to punish for contempt, unlimited by statute, has the right to summon a defendant to answer, and then after obtaining jurisdiction by the summons, refuse to allow the party summoned to answer or to strike his answer from the files, suppress the testimony in his favor, and condemn him without consideration thereof and without a hearing, on the theory that he has been guilty of a contempt of court. The mere statement of this pro-

position would seem, in reason and conscience, to render imperative a negative answer. *The fundamental conception of a court of justice is condemnation only after hearing. To say that courts have inherent power to deny all right to defend an action and to render decrees without any hearing whatever is, in the very nature of things, to convert the court exercising such an authority into an instrument of wrong and oppression, and hence to strip it of that attribute of justice upon which the exercise of judicial power necessarily depends.*" (Italics supplied.)

While the court later, in Hammond Packing Co. v. Arkansas, 212 U. S. 322 (1909), upheld an Arkansas statute authorizing a court, upon a defendant's failure to comply with a court order requiring the production of books, papers or documents, to strike out his answer or other pleadings, and render judgment by default against him, the use of default judgments as a sanction for disobedience must be carefully scrutinized and used sparingly.

The entry of a default judgment poses grave danger of interfering with substantive rights and of violating the right of trial by jury.

In Goodrich-Amram, §4019(c)-5, footnote 19, it is stated:

"[I]f the effect of the default can be construed as an admission of facts, the admission of which will dispose of the entire controversy on the merits, a default judgment is not necessarily invalid. But if the default, construed as an admission, still leaves open areas of controversy on the merits, then a judgment by default would be a violation of due process."

Here, the default judgment was entered against Kauffman for his failure to answer interrogatories. Yankee Lines did not induce or encourage Kauffman or have any control over Kauffman's disobedience.

Yankee Lines has answered the interrogatories

served upon it which are similar to those Kauffman failed to answer.

Furthermore, there is nothing contained in the interrogatories which constitutes an admission of liability or facts sufficient to infer liability.

The rules of procedure do not allow for the entry of judgment against a party other than the disobedient party. To allow a default judgment against a disobedient party to be used against another party would be to punish one for the contempt of another, analogous to allowing a default to be entered against an innocent party. Judgment is not permitted in the latter situation and, since it cannot be entered there, it cannot be allowed here. To hold otherwise would be to impose an extreme penalty without an opportunity to be heard.

The issue of negligence still being unresolved, summary judgment cannot be allowed and the petition is dismissed.

## ORDER

And now, January 17, 1973, following argument before the court en banc consisting of Frederick B. Smillie, J., A. Benjamin Scirica, J., and Louis D. Stefan, J., plaintiff's motion for summary judgment is denied.